Argued September 11, affirmed November 24, 1972

McKENZIE FLYING SERVICE, INC., *Respondent,*
*v.* YORK, *Appellant.*

503 P2d 478

*Harold D. Gillis,* Eugene, argued the cause for appellant.

*Paul D. Clayton,* Eugene, argued the cause for respondent.

HOLMAN, J.

Plaintiff brought an action for the reasonable value of labor and materials furnished in the repair of a Cessna aircraft owned by defendant. Defendant

counterclaimed for damages for conversion to the aircraft. At trial, after completion of all evidence, the court directed a verdict in favor of plaintiff both on its complaint and on defendant's counterclaim. Defendant appeals and asserts as error the directed verdicts.

In 1966 defendant purchased the aircraft in question from plaintiff on a conditional sales contract. Plaintiff assigned the contract to the manufacturer's financing subsidiary, Cessna Finance Corporation (Cessna). The aircraft, together with five others, was then leased by defendant to another corporation, Fly Mooney, of which defendant was the principal stockholder. The plane was used for rental and flying lessons and on May 31, 1968, was damaged in a landing by a student pilot. After examination by an adjuster of defendant's insurer, the defendant ordered the aircraft repaired by plaintiff. After repair, it was returned to defendant on July 25, 1968. The amount of plaintiff's repair bill was $1,325.00.

A check for $1,071 was issued by defendant's insurer, which check represented the amount of the loss less a deductible amount provided by the policy and a minor item for which the company had no coverage. The check was delivered to Cessna, the legal owner, by the insurer and was made out both to Cessna and to defendant. Cessna forwarded the check to defendant on October 10 for his signature and defendant endorsed it and returned it to Cessna. Defendant testified that he thought Cessna was going to send the check to plaintiff. However, there were three monthly payments due Cessna on the contract of purchase and Cessna applied part of the check on defendant's contract to bring it current and sent the balance of $452.68 to defendant, who received the money on November 8.

In the meantime, on August 20, plaintiff filed a nonpossessory lien upon the aircraft for the amount of its charge. In the latter part of October plaintiff made inquiry concerning the insurance proceeds and was erroneously informed by the insurance adjuster that defendant had received the full amount of the insurance. Shortly thereafter, on November 6, plaintiff, through its president, Mr. Ruberg, directed the sheriff to seize the aircraft and to foreclose the lien in conformance with the statute.[①] On that day the sheriff seized the aircraft and it was flown to plaintiff's airfield where it remained in the legal possession of one of plaintiff's employes, who was appointed as a keeper by the sheriff.

Defendant was served with notice of the proceedings, knew of the seizure of the aircraft, and subsequently informed plaintiff that he had no intention of paying the lien. Defendant did not contest the lien proceedings and made no effort to secure possession of the aircraft. Also, he made no more payments to Cessna. There is no contention that during the aircraft's possession by the keeper, plaintiff interfered with that possession or used the aircraft in any way.

After the 14-day waiting period within which defendant could have made an appearance, the sheriff contacted Mr. Ruberg to arrange for the sale of the aircraft at auction upon foreclosure. Mr. Ruberg asked the sheriff to hold up the sale as he was attempting to secure a purchaser for the aircraft who would pay a price which would cover both the balance owing to Cessna and the amount of plaintiff's lien. Thereafter, on two different occasions, over a period of months,

---

[①] ORS 87.110.

the sheriff contacted Ruberg's office, but Ruberg was out, and the sheriff left word for him to call. Ruberg did not call back. Cessna subsequently filed with the Federal Aviation Agency (FAA) a certificate of re-possession, indicating it had repossessed the aircraft on April 11, 1969. A memorandum of release to Cessna by the sheriff appeared in the sheriff's records under date of May 20.

The balance owing on the aircraft at the time possession was taken by the sheriff was $3,800. Defendant testified that at that time the aircraft was worth $5,600. The aircraft was subsequently purchased by plaintiff from Cessna on June 2. The exact price is not shown by the evidence, but records of FFA show a chattel mortgage given to Cessna by plaintiff in the sum of $4,507.56. The plane was sold by plaintiff to a third party for $4,750 on October 21.

Although defendant's assignment of error covers the propriety of the trial court's actions in granting a directed verdict in favor of plaintiff on its complaint for repairs, it is apparent from his brief that he does not really contend there was error in this respect. At the time of trial, he testified that he had no dispute concerning the amount of plaintiff's charge or the manner in which the work was performed. He actually contends that the court erred in not giving the jury the opportunity to return a judgment for conversion against the plaintiff which would more than offset the amount of the repairs.

The question in this case is whether there was sufficient evidence to allow the jury to draw the in-ference that plaintiff converted defendant's aircraft. In *Mustola v. Toddy,* 253 Or 658, 664, 456 P2d 1004

(1969), this court adopted Section 222A of the Restatement (Second) of Torts as the definition of conversion:

"§ 222A.    What Constitutes Conversion

"(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

"(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

"(a) the extent and duration of the actor's exercise of dominion or control;

"(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

"(c) the actor's good faith;

"(d) the extent and duration of the resulting interference with the other's right of control;

"(e) the harm done to the chattel;

"(f) the inconvenience and expense caused to the other."

*Comment d.* in the Reporter's Notes to this section states:

"*d.* No one factor is always predominant in determining the seriousness of the interference, or the justice of requiring the forced purchase at full value. Those listed in Subsection (2) are not intended to be exclusive. The question is nearly always one of degree, and no fixed line can be drawn. There is probably no type of conduct with respect to a chattel which is always and under all circumstances sufficiently important to amount to a conversion, since the interference with the right of the plaintiff may in each case be either trivial or serious. Not only the conduct of the defendant, but also its consequences, are to be taken into account. In each case the question to be asked is whether the actor

has exercised such dominion and control over the chattel, and has so seriously interfered with the other's right to control it, that in justice he should be required to buy the chattel."

It is the defendant's contention that the request by plaintiff to the sheriff that the sheriff delay the sale of defendant's aircraft and the resultant inactivity amounted to a conversion of his aircraft by plaintiff. In addition, defendant contends that the jury could draw the inference that the purported foreclosure of the lien was not for that purpose but was to "seize it from York in retaliation and reaction" for failure to apply the insurance money to the bill.

The aircraft was seized November 6. Assuming that defendant was served that day with notice of the seizure, his opportunity for an appearance would have expired 14 days later on November 21. If the aircraft had been immediately put up for sale, the advertising of the sale, in conformance with the statute, would have taken ten days more. Allowing a moderate amount of leeway, it would be fair to assume that if sold promptly, the aircraft would have been disposed of around the middle of December. It was repossessed by Cessna on April 11, so there was a delay of approximately four months which was attributable to plaintiff.

It is difficult to see how defendant has shown that he was deprived of his aircraft by the delay. Had the aircraft been sold in the middle of December, that would have been an end to his interest in it. As it was, defendant lost the aircraft for failure to pay the unpaid balance of the purchase price of $3,800. It is merely speculation whether it would have brought more than its unpaid balance upon a prompt, forced sale without anyone attempting to secure interested bidders. Plain-

tiff's and defendant's interests were synonymous, that is, each wanted to secure the maximum amount of money for the aircraft. Defendant admits that Ruberg contacted him several times after the sheriff's seizure of the aircraft to see if defendant had knowledge of anyone who was in the market for such a plane. Defendant testified he told Ruberg he did not know of any such person.

■ As stated in the comment to the Restatement quoted above, the question is one of degree, and no exact line can be drawn. From the facts recounted, which were those most favorable to defendant, we believe no inference can be drawn that the delay in the sale caused by the conduct of the plaintiff was sufficiently blameworthy and detrimental to defendant that justice requires plaintiff to purchase the chattel.

■ Insofar as defendant's contention is concerned that the aircraft was seized with no intention of foreclosing the lien but, rather, as part of some sort of scheme to punish him because he had not applied the insurance money to plaintiff's bill, we believe there is clearly insufficient evidence from which to draw an inference that there was such a scheme.

■ In his reply brief, defendant contends the United States Supreme Court has held that statutory procedure similar to that availed of in this case does not afford due process of law because of the lack of judicial supervision of the seizure and the lack of opportunity for the owner to be heard first. *Fuentes v. Shevin,* 407 US 67, 92 S Ct 1983, 32 L Ed 2d 556 (1972). Before that decision would apply to this case, it would have to be given retrospective application. In any

event, the proper place to raise the issue was at the time of and in the proceedings for the seizure of the aircraft.

The judgment of the trial court is affirmed.